Ruffin, C. J.
The question raised by these appeals is, whether the plaintiff has such an interest in the slaves in controversy, or has stated such a case as authorizes the court to interfere with the possession of them by the defendants, or to interrupt legal proceedings between the defendants themselves, for the purposes respectively of asserting a title to the slaves in some of the defendants, or of asserting by another a right to satisfaction out of them for the debt of yet *519 another of the defendants, by laying hold of the property and bringing it into this court.
As between the plaintiff and Benceni separately, there would seem clearly to be no ground for the-interposition of the Court of Equity. They both claim as creditors of the same person, each insisting that the negroes are the property of that person, and liable for his debts. Even if it were true, that the negroes were brought into this State at the instance of Benceni, in order that he might gain a preference over the plaintiff by attaching here before the other could seize in South Carolina, there would be nothing for the cognizance of this court. It would be simply a case of legal priority, obtained by a vigilant creditor, against which equity could not relieve at the instance of a less active creditor, who had no specific title or lien on this property. But all agency on the part of Benceni in getting the negroes here is denied, and it seems he owes his priority -to good luck rather than any foresight of his own. The plaintiff, therefore, has nothing but his own want of diligence to find fault with upon this part of the case. How far the Court of Equity might go in relieving at the instance of a creditor by judgment and execution against an an attachment, upon the ground that the debt therein demanded was not real, and that the process was sned out and kept on foot collusively for the purpose of covering the property and withdrawing it from the reach of just creditors, we do not think it necessary to say definitely. Probably the nature of the debt and the fraudulent purpose might be inquired into, in the same manner and for the same purpose, as if the proofs, instead of being an attachment, were an execution on .a fraudulent judgment. Butin this case the debt appears to be due to Benceni. in the first place, and, in the next, all concert between that party and fill the others is denied; and it is evident that, whether the debt be owing or not, Benceni really claims it as against his alleged debtor, and that his attachment is a Iona fide litigation to obtain satisfaction out of this property, as against all the other parties, plaintiff and defendants. There is then no prin-ple, on.which the jurisdiction can be'changed, oran impedí *520 ment thrown in the way of this defendant in prosecuting his legal remedy, and keeping all the advantages which he thereby has at law. Upon this ground alone, therefore, the court would hold, that there was no error in so much of the decree as the plaintiff appealed from, and order it to stand affirmed, with costs to Benceni. But, in truth, the cause, as between these parties, need not be determined on those particular circumstances, but falls within a general principle, on which the whole case must be decided against the plaintiff, as we think.
The general principle alluded to is this : that a creditor, by judgment in another State, against a citizen of the same State, cannot come into this State for satisfaction out of the debtor’s property, situated here. We do not take notice of claim set up to the negroes by the children under the'father’s -gift; because assuming them to belong to the father, the plaintiff cannot reach them in this way. The proceeding is 2trim® imyressionis. We are not informed of any thing,that can be made to serve' as a precedent; though; doubtless, the case has occurred in very many instances, where the debtor had no property in the State, in which the judgment was rendered, but it was removed into, or before was situate in another State; and attempts like the present would have been often made, if they could have been caried through. It is true, the judgment of the court of one State is deemed valid and conclusive in the courts of a sister State. What was done under a judgment in the State, in which it was rendered, is sustained by them, if brought into litigation in the courts of another Stale. So the latter courts will aid in its execution, when necessary to render it effectual. But they give such aid in its execution by receiving if as evidence of a debt, or of property, when it is made the direct subject of action or of defence in those courts;- and in no other manner. At least we are not aware of any case, in which the court of one State has undertaken to give an extraordinary remedy to a creditor, by judgment in another State, merely on-the ground, that the laws of his own State did not furnish an effectual remedy. If such be the fact, he- *521 must look to his own domestic authorities to alter and amend their laws, and not to the tribuíais of another State to supply that want of an effectual remedy. But every country must be presumed a competent judge ot the justice due between its own citizens, and to provide effectual means for administering it. Therefore, if these negroes be the property of Daniel Thomas the elder, and were subject to the plaintiff’s satisfaction, it cannot be supposed that -the law of South Carolina will not, in some manner, compel him to assign them to the plaintiff, or to some officer of the law, to dispose of and apply the proceeds for the benefit, of the plaintiff and his other creditors. So if the children of Thomas have done the plaintiff a wrong in removing the negroes, it is a wrong, made so by the laws of South Carolina, and perpetrated there by her own citizens, who must be taken to be duly amenable to her laws. Hence there is no reason for the interference of our courts between persons, all whom are alien to our laws and tribunals, and. have access to their native institutions. It may be here observed, that in this spirit is our attachment law conceived ; which gives not that remedy against a person residing in another government to another person also residing in another government. We believe, that a similar provision is found in the codes of all the States, which give the process of attachment; and it proceeds on the idea, that it is not incumbent upon one State to administer justice between citizens and inhabitants of other States, but recourse may be had to the country having jurisdiction over the persons. A judgment in another'State cannot be enforced here, by process of execution issued by our courts in the first instance; for the defendant has a right to contest the fact, whether it be a judgment in another State or not. Therefore, it must be made the subject'of an action here, and the demand become due by a judgment of our courts, before the party can have execution here. We entertain that jurisdiction, because the party has come within the State ; and we execute against him our own judgment. But as we cannot execute a judgment abroad by process here at law, so it seems necessarily to follow, that a Court of Equi *522 ty here ought not to condemn property, that it can lay hold of for the satisfaction of such a judgment. Equity is an-ciliary to the law in aiding; creditors by judgment and execution in our own courts, where it is necessary for- their satisfaction. But then the persons and property are within the State, and no jurisdiction is arrogated over persons or things abroad. The interposition of the court is here invoked upon the same plea of necessity. But it is not a similar necessity ; nor one that can be admitted to exist. The supposed necessity consists in a defect imputed to the law of the country., to which all the parties belong, in not providing against the power of a debtor to- put his property out of the way of his creditor, or in not compelling him to produce it or make it subject to the debt, or in not giving just redress against third persons, who have aided the debtor in such- his wrongful acts. Jt may be, that the Jaw of South Carolina is lame in alb these particulars, and that help from some other quarter is necessary. But we cannot believe, that by process against the body or some other means, the creditor cannot have due redress in his own State. If, however, it should be otherwise, the necessity of the plaintiff’s- case calls for legislative assistance at home, and' cannot instigate the judicial tribunals of this State to enforce a judgment not rendered here, and against a person not resident within our jurisdiction.
Our opinion therefore is, that so-mush of the decree as continued the order of sequestration against any of the defendants was erroneous, and ought to be reversed with costs to the defendants. All which must be certified to the Court of Equity.
Per Curtam. Ordered accordingly.